# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**NOAH HANS FRIEDEN,**
      **Plaintiff,**

      v.                                                             Case No. 13-CV-1242

**TONY MELI, JESSIE J. SCHNEIDER,
JOSEPH BEAHM, JESSE J. JONES,
JEREMY L. STANIEC, SHANE M. WALLER, and
KRISTINE A. DEYOUNG**
      **Defendants,**

## ORDER

Plaintiff Noah Hans Frieden is proceeding pro se on Eighth Amendment claims against the defendants, including medical care claims against defendant Kristine DeYoung. Now before me is DeYoung's motion for summary judgment. She argues both that plaintiff failed to exhaust his administrative remedies regarding his claims against her and that his claims against her fail on the merits. Also before me is plaintiff's request for appointed counsel.

## I. Facts[1]

Plaintiff, Noah Hans Frieden, was an inmate at Waupun Correctional Institution (Waupun) at all times relevant to this case. Defendant Kristine DeYoung is employed as a nurse at Waupun.

---

[1] The Facts are taken from the Defendants' Proposed Findings of Fact. None of plaintiff's responses to DeYoung's motion for summary judgment is sworn, but I will consider the arguments he makes. I will also consider plaintiff's sworn complaint as a sworn complaint. See Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996).

## A. Facts Regarding Medical Care

After plaintiff's incident with officers in June 2013, DeYoung conducted an examination of plaintiff at the strip cage. In the progress notes, DeYoung indicated that it was difficult to examine plaintiff because he was screaming and actively resisting. Nevertheless, plaintiff complained of left wrist pain, and DeYoung examined him. She noted some minor abrasions from handcuffs, tazer signature marks on plaintiff's back, and a bruise or abrasion on plaintiff's back.

On June 14 and 15, 2013, plaintiff submitted health service requests ("HSRs") asking for an x-ray of his wrist. DeYoung saw plaintiff on June 17, 2013. She noted linear fading bruises on both wrists where handcuffs would have been. Other than that, she saw no hand or wrist deformity or discoloration. She did not order an x-ray of plaintiff's wrist.

On June 19, 2013, plaintiff submitted an HSR asking for ointment, antibiotics, and something for pain and swelling. DeYoung saw plaintiff on June 20, 2013, noted one small scab that was healing well, and explained to plaintiff the wound healing process and proper use of antibiotics.

On June 28, 2013, plaintiff submitted an HSR stating that his hands and forearms were numb. DeYoung saw plaintiff on July 1, 2013, and he complained of numb hands and forearms every morning and pain in his wrist. Upon examination, she found no deformity and a range of motion within normal limits of handcuffs. She directed plaintiff to continue using ibuprofen as needed, work on his range of motion, and massage the area four times a day.

On July 6, 2013, plaintiff submitted an HSR saying he was still waiting for pain medication and medicated shampoo. DeYoung saw plaintiff on July 11, 2013, and the

examination focused on medicated shampoo and plaintiff's jaw. She made a note to check on ibuprofen delivery.

Plaintiff submitted an HSR on September 19, 2013, stating that his left arm and muscles kept twitching. DeYoung attempted to evaluate plaintiff during a sick call appointment on September 20, 2013, but plaintiff refused to be evaluated.

On December 19, 2013, plaintiff's submitted an HSR that said his left wrist felt like a needle on the inside. DeYoung attempted to evaluate plaintiff during a sick call appointment on December 20, 2013, but plaintiff again refused to be evaluated.

Plaintiff submitted another HSR on December 21, 2013, saying that he was still experiencing off and on pain in his wrist. DeYoung treated plaintiff on December 26, 2013. She found him alert and oriented, in no acute distress, well-nourished, well-hydrated, and cuffed behind his back. Plaintiff's range of motion was intact within the limits of the cuffs, and plaintiff denied a change or decrease in range of motion without cuffs on. He told her his main issue was intermittent pain. DeYoung conducted a thorough examination and instructed plaintiff on how to slowly work to strengthen the area. She advised plaintiff to avoid strenuous activity until his strength and mobility returns and told him to continue taking ibuprofen as directed.

**B.    Plaintiff's Use of Inmate Complaint Review System**

The Wisconsin Department fo Corrections maintain an Inmate Complaint Review System ("ICRS"). The purpose of the ICRS is to afford inmates a process by which grievances may be expeditiously raised, investigated, and decided.

On September 19, 2013, plaintiff submitted an offender complaint regarding the medical care provided after the incident with staff on June 13, 2013. In his September 19,

2013, complaint, plaintiff stated:

> This is the 2nd time now I've asked what is going on with my complaint on June 20th referring to on 6-16-13 when I asked the nurse to have my arm/wrist x-rayed from the incident on the 13th. I have pay'd the 7.50 co-pay.
>
> On the 25th of July I asked about my complaint and why I havent' [sic] even receive any answer. After this I'm going strait [sic] to CCE in Madison.
>
> If you have answered back I did not receive it and am asking for you to send a copy of the receipt that you have my complaint on file.

(ECF No. 32 at ¶ 35.)

Institution Complaint Examiner ("ICE") James Muenchow checked the ICRS records for any complaints filed by plaintiff about a co-pay or HSU visit on June 16, 2013. Muenchow found that plaintiff did not submit a complaint relating to a co-pay or HSU visit prior to the complaint he submitted on September 19, 2013.

Muenchow returned plaintiff's September 19, 2013, complaint for two reasons. First, complaints shall only contain one issue and be clearly identified. Second, plaintiff did not submit a previous complaint about a co-pay or HSU visit.

On September 26, 2013, plaintiff resubmitted his offender complaint with regarding to medical care provided after the incident with staff on June 13, 2013. In this complaint, plaintiff again states that he paid a $7.50 co-pay and did not receive an x-ray and that his wrist was not properly examined. On the same day he received the complaint, Muenchow returned the complaint to plaintiff because complaints can only contain one issue and the issue must be clearly stated. Muenchow could not discern whether plaintiff was grieving the medical treatment he received or if he was grieving the co-pay charge he incurred.

4

Muenchow asked plaintiff to clarify one issue and the date of the occurrence. Plaintiff clarified his issue and resubmitted his complaint on December 5, 2013. Plaintiff's clarified complaint was filed as complaint number WCI-2013-23355.

In WCI-2013-23355, plaintiff claimed that he did not receive an x-ray and that his wrist was not properly examined. Plaintiff further stated that the date of the incident was June 13 and that he saw a nurse the following week; he estimated June 16.

Muenchow rejected the complaint on December 5, 2013, and wrote:

> DOC 310.09(6) states that an inmate shall file a complaint within 14 days after the occurrence giving rise to the complaint, except that the institution complaint examine may accept a late complaint for good cause.
>
> Inmate Frieden complains regarding the level of treatment determined necessary and treatment received from the nurse on 6/6/13.
>
> That is the occurrence giving rise to the complaint and the date of occurrence is clearly stated as 6/16/13. It is well beyond the 14-day time limit to file a complaint questioning the assessment and treatment given to inmate Frieden on 6/16/13. Inmate Frieden makes no plea for good cause and does not present evidence to show how he was denied the use of or inhibited in any way from using the ICRS since the date of the occurrence.
>
> The complaint is rejected as it fails to adhere to th stated filing requirement.

(ECF No. 33-4, p. 3).

Plaintiff submitted a request for review of the rejected complaint on December 9, 2013. Reviewing authority Lori Alsum determined that the complaint had been "appropriately rejected by the ICE in accordance with DOC 310.11(5)." (ECF No. 33-4, p. 7).

5

Plaintiff had already filed his complaint on October 27, 2013; the court opened this case on November 4, 2013.

## II. Analysis

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Defendant DeYoung submits that plaintiff failed to exhaust his administrative remedies regarding medical claims stemming from the June 13, 2013, incident. Alternatively, DeYoung argues that she was not deliberately indifferent to plaintiff's medical needs.

**A.     Exhaustion**

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(e). The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules. Woodford v. Ngo, 548 U.S. 81, 87, 92 (2006); Pozo v. McCaughtry, 286 F.3d 1022, 1023 (7th Cir. 2002). It is a defendant's burden to establish that the plaintiff has failed to exhaust administrative remedies. Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002).

An inmate begins the ICRS process by filing a complaint with the ICE at his institution. A complaint must be filed within fourteen calendar days of an alleged incident, though the deadline can be waived or extended for good cause. Wis. Admin. Code § DOC 310.09(6).  After receiving a complaint, the ICE either returns the complaint to the inmate or enters and processes the complaint. Wis. Admin. Code §§ DOC 310.09(3), DOC 310.11(2). If an inmate complaint is not returned, the ICE must review and acknowledge receipt of the complaint in writing within five working days of the date of receipt. Wis. Admin. Code § DOC 310.11(2). Within twenty days from the date of acknowledgment the

ICE must either reject the complaint or send to the reviewing authority a recommendation to dismiss or affirm the complaint. Wis. Admin. Code § DOC 310.11(4) and (11). The "reviewing authority" means the warden, bureau director, administrator, or designee who is authorized to review and decide an inmate complaint at the institution level. Wis. Admin. Code § DOC 310.11(2).

DeYoung has laid out a fact pattern under which plaintiff did not submit a timely complaint about the medical care he received. However, plaintiff argues that he submitted a timely complaint on June 20, 2013, that he never heard back about, then followed up on it on July 25, 2013. He then resubmitted his complaint in September 2013. Plaintiff does not submit any sworn evidence regarding this earlier complaint, but the text of plaintiff's September complaint is enough to create a question of fact regarding whether he submitted a timely complaint that was somehow lost or ignored. Although Muenchow found no record of an earlier complaint in the ICRS records, plaintiff's September complaint supports his assertions regarding an earlier complaint that somehow was never processed.

A reasonable jury could conclude that the ICRS process was unavailable to plaintiff. Prisons "may not take unfair advantage of the exhaustion requirement." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). "[A] remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." Id. (quoting Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002)). When prison officials thwart inmates from exhausting, "the process that exists on paper becomes unavailable in reality." Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006).

8

I will deny DeYoung's motion for summary judgment regarding exhaustion. Generally, a denial of summary judgment on exhaustion due to a factual dispute would mean a Pavey hearing to the court to resolve the questions of fact. See Wagoner v. Lemmon, 778 F.3d 586, 588 (7th Cir. 2015); Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008). However, in this case, by also briefing summary judgment on the merits, DeYoung has indicated a desire for me to bypass the Pavey hearing and consider plaintiff's claim against her on the merits.

**B.     Eighth Amendment Medical Care Claim**

DeYoung argues that she was not deliberately indifferent to any serious medical need plaintiff had. She evaluated plaintiff's injuries five times in July and July of 2013, and again in December. Plaintiff refused additional evaluations by DeYoung in September and December because he did not want defendant Beahm to transport him to his medical appointments.

According to plaintiff, DeYoung failed to properly examine his wrists. He says that his hands were still handcuffed and behind his back so DeYoung could not fully examine plaintiff's injuries. He also asserts that DeYoung failed to order x-rays and failed to supply pain medication and ointment. He does acknowledge that DeYoung documented all the injuries in plaintiff's medical file. (ECF No. 1 at 5-6).

In Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011), the Seventh Circuit set forth the standard for Eighth Amendment medical care claims:

> "The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 828 (7th Cir. 2009) (quoting Estelle v. Gamble, 429 U.S. 97, 97

9

> S.Ct. 285, 50 L.Ed.2d 251 (1976)). Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs. Estelle, 529 U.S. at 104, 97 S.Ct. 285. Accordingly, a claim based on deficient medical care must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition. See Johnson v. Snyder, 444 F.3d 579, 584 (7th Cir. 2006); see also Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). "Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." Rodriguez, 577 F.3d at 828 (quoting Estelle, 429 U.S. at 103, 97 S.Ct. 285).

There is no dispute of material fact regarding DeYoung's treatment of plaintiff's wrist. Plaintiff believes that DeYoung should have evaluated his wrists without the handcuffs on and ordered x-rays. However, those are both disagreements with DeYoung's medical judgment, and "mere disagreement with a [nurse's] medical judgment does not constitute deliberate indifference." Edwards v. Snyder, 478 F.3d 827 (7th Cir. 2007). Although plaintiff was handcuffed, DeYoung's notes in the medical records confirm that she was able to see fading bruises, exclude hand or wrist deformity or discoloration, and evaluate his range of motion. DeYoung made objective and subjective findings that led her to decide not to order an x-ray of plaintiff's wrist. This was not deliberate indifference.

In his sworn complaint, plaintiff also avers that he never received the pain medication DeYoung ordered, even after he followed up. (ECF No. 1 at 5). In his unsworn response to DeYoung's motion for summary judgment, plaintiff argues that DeYoung "never provided [him] with any pain meds and lied about sending them." (ECF No. 47 at 2). Plaintiff attached exhibits to his response that list ibuprofen as one of his approved medications. (ECF No. 47-1 at 2-3). These exhibits also include HSRs indicating first that his order for ibuprofen had expired and then that a nurse (not specified as DeYoung)

10

delivered them again on July 11. (ECF No. 47-1 at 5-8).

Plaintiff's allegations and exhibits are consistent with DeYoung's treatment notes. She ordered ibuprofen on June 19 and advised plaintiff to continue taking it on June 28. There is no note that plaintiff told her on June 28 that he had not received the medication. Finally on July 11, DeYoung made a note to check on the status of the ibuprofen, and it appears a nurse delivered additional medication the same day. This does not show deliberate indifference by DeYoung. Though plaintiff may have had difficultly getting his ibuprofen, there is no evidence in the record to suggest that it was anything more than a mistake, or even that DeYoung was involved. I will grant DeYoung's motion for summary judgment on the merits.

### III. Plaintiff's Motion to Appoint Counsel

After DeYoung's motion for summary judgment was fully briefed, plaintiff filed a request for appointed counsel. He argues that he has a very limited knowledge of the law, has never cross-examined anyone, and has limited access to the law library, especially in segregation. He also suggests it will be hard to be aggressive during trial while also being the victim and says his obsessive compulsive disorder gets in the way and can drastically influence his behavior during trial. Plaintiff further argues that this case is a mental burden because he worries about defendants and their coworkers having access to his legal papers and his incoming and outgoing legal mail. He also submits that he could be rendered incapacitated at any time due to a loss of paper, loss of pen, or being strapped down, and then be unable to communicate with the court.

Defendants only moved for summary judgment on the claim against defendant DeYoung, and the dispositive motion deadline has passed. I therefore presume that the

11

other defendants do not intend to file summary judgment motions and are ready to proceed to trial. I will therefore schedule a telephonic status conference with the parties during which we can discuss plaintiff's motion to recruit counsel and the next steps of this case.

**THEREFORE, IT IS ORDERED** that defendant Kristine DeYoung's motion for summary judgment (Docket #30) is **GRANTED**.

**IT IS FURTHER ORDERED** that a telephonic status conference is scheduled for **March 16, 2016 at 11:00 a.m.** The court will initiate the call.

Dated at Milwaukee, Wisconsin, this 29th day of February, 2016.

                                                s/ Lynn Adelman
                                                _____
                                                LYNN ADELMAN
                                                District Judge